UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DARREN J. STRIDIRON, EVELYN MEIJA
STRIDIRON, and MATTHEW A.
STRIDIRON

               Plaintiffs,

   -against-

NEWBURGH ENLARGED CITY SCHOOL
DISTRICT, CAROLE MINEO, PHIL
HOWARD, LISA MARIE SPINDLER and
ROBERTO PADILLA

**AMENDED COMPLAINT**

Docket No. 20-cv-6823 (CS)

---

Plaintiffs, Darren J. Stridiron, Evelyn Meija Stridiron and Matthew A. Stridiron, by and through their attorneys, Tully Rinckey, PLLC, for their complaint against the defendants Newburgh Enlarged City School District, Carole Mineo, Phil Howard, Lisa Marie Spindler and Roberto Padilla, allege, on personal knowledge as to themselves and upon information and belief as to all other matters, as follows:

## PARTIES

1.    Plaintiff Darren J. Stridiron is an individual residing in the State of New York, the father of Matthew A. Stridiron, and a member of the Board of Education of the Newburgh Enlarged City School District.

2.    Plaintiff Evelyn Meija Stridiron is an individual residing in the State of New York and the mother of Matthew A. Stridiron.

3.    Plaintiff Matthew A. Stridiron is an individual residing in the State of New York and a former student in the Newburgh Enlarged City School District.

4.      Defendant Newburgh Enlarged City School District ("NECSD") was and is a public school district organized and existing under the laws of New York State, which district is located in the County of Orange.

5.      Defendant Carole Mineo is an individual, who at all times relevant was the Board President of the Newburgh Enlarged City School District.

6.      Defendant Phil Howard is an individual, who at all times relevant was on the Board of the Newburgh Enlarged City School District.

7.      Defendant Lisa Marie Spindler is an individual, who at all times relevant was the Assistant Superintendent of Curriculum & Instruction Grades 6-12 of the Newburgh Enlarged City School District.

8.      Defendant Robert Padilla is an individual, who at all times relevant, was the Superintendent of the Newburgh Enlarged City School District.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over the Defendants pursuant to Fed.R.Civ.Proc. in that Defendants removed this action from the Supreme Court, County of Orange and involves a federal question.

10.     Venue for this action is proper in the Southern District of New York in that one or more of the defendants resides in the District.

## CONDITIONS PRECEDENT TO SUIT UNDER
## GENERAL MUNICIPAL LAW §50-h AND EDUCATION LAW §3813

11.     All conditions precedent to suit have been complied with in that the plaintiffs served a verified Notice of Claim on the NECSD within ninety days/three months of the happening of the events upon which the claim is based.

12. Plaintiffs were the subject of a § 50-h hearing held on January 7, 2020 and January 31, 2020 and were conducted by Caroline B. Lineen, Esq., counsel for the Newburgh Enlarged City School District.

13. More than thirty days have elapsed since the service of such Notice and adjustment or payment has been neglected.

14. This action has been commenced within one year after the happening of the events upon which the claim is based and within the extensions for filing as granted by the New York Executive Orders.

## FACTS

15.    Upon information and belief, at some time prior to April 4, 2019, a grand jury investigated student attendance, athletics eligibility and credit-recovery in the APEX program at the Newburgh Enlarged City School District (hereinafter the "NECSD"), and found systemic failure in its policies that included grade changing, manipulation of attendance records, and allowing ineligible student-athletes to participate in sports and issued a report. Plaintiff Darren Stridiron was a witness and testified to the Grand Jury about such matters.

16.    Upon information and belief, following this report, Susan Prokosch, Vice President of the Board of Education, stated to Defendant, Roberto Padilla, and the cabinet that they needed to determine who provided the information that was contained in the report.

17.    Upon information and belief, Defendant Carole Mineo attempted to find out who the informant was by directly asking each Board member if they were a Grand Jury witness, including questioning Plaintiff Darren Stridiron.

18.    In April 2019, Carole Mineo yelled at Darren Stridiron, falsely claiming, "You are not honest. You told people confidential information."

19.     On or about May 13, 2019, Matthew Stridiron was named the valedictorian of the NECSD Class of 2019.

20.     On or about May 20, 2019, the NECSD demoted Matthew A. Stridiron from valedictorian to salutatorian.

21.     On or about May 20, 2019, Defendant Lisa Marie Spindler, with co-principals Matteo Doddo and Raul Rodriguez present, called Darren Stridiron to advise him that there had been a recalculation of valedictorian status based on a new system that incorporated third quarter grades over the weekend and based on the new calculations, Matthew A. Stridiron was the salutatorian.

22.     This was contrary to the information provided by the school guidance counselor, Mrs. Harrold, in January 2019 that only final course grades are used to calculate.

23.     Defendant Spindler gave Darren Stridiron three hours to leave work and gather evidence that Matthew A. Stridiron was entitled to be valedictorian.

24.     Darren Stridiron was informed by a reporter for the Times Herald Record that Defendant Phil Howard had obtained confidential information about a potential offer to make Matthew Stridiron a co-valedictorian.

25.     The reporter for the Times Herald Record informed Darren Stridiron that she had never provided her personal cell number to Phil Howard and that Howard had probably obtained it from Roberto Padilla.

26.     The reporter also informed Darren Stridiron that Phil Howard used the alias "Joey Johns" to contact her to state that a Board member was using his "influence" to get his son named co-valedictorian in an attempt to rob a "poor Hispanic kid" of that honor. Howard told the reporter that they should run a story on that. Howard further stated that the criteria for determining the

class rank "uses 3rd quarter grades" and that "they needed to call downtown for the answers."

27.     Upon information and belief, on or about May 21, 2019, Darren Stridiron was informed that Carole Mineo, Sue Prokosh, and Roberto Padilla secretly met concerning the valedictorian dispute, which involved confidential student records to which none of the Board members was supposed to have access, and used this information to tarnish Matthew Stridiron's academic standing.

28.     These same Board members were directly connected to the prior complaints by Darren Stridiron regarding the attendance issues raised in front of the grand jury.

29.     On or about May 22, 2019 Matthew Stridiron was given a new letter advising him that he was now co-valedictorian.

30.     NECSD announced Matthew Stridiron as the co-valedictorian on Instagram, Facebook, Twitter and the District webpage.

31.     In addition, NECSD issued social media posts naming Matthew Stridiron as co-valedictorian that were shared with District personnel and academic institutions, including Columbia University, where Matthew Stridiron had been accepted.

32.     On or about May 22, 2019, Matthew Stridiron was denied the opportunity to qualify for scholarship awards that were handed out at the Carroll F. Johnson Scholastic Achievement Dinner. Darren Stridiron was informed a day earlier by Nancy Taddiken of the Lower Hudson Council of School Superintendents that the applications for these scholarships were sent to Defendant Padilla on March 13, 2019 and were due on April 30, 2019. Dr. Padilla failed to prepare the application in time and waited two days before the event to secure seats at the dinner. Dr. Padilla denied Matthew Stridiron the opportunity to be recognized amongst his peers as an outstanding student and Matthew Stridiron lost his opportunity to secure

scholarship funding.

33.     On the day of his SUNY College graduation, Cassie Skarlz, Communications Strategist for the NECSD and associated individuals working under the direction of Cassie Skarlz, interfered with Matthew Stridiron being interviewed about his co-valedictorian status, including interrupting and attempting to physically remove Matthew Stridiron from the interview.

34.     On or about May 24, 2019, NECSD discriminated against Matthew Stridiron when Assistant Superintendent for Curriculum K-5, Sarah Feliz, replied to a tweet from NECSD's Twitter account, stating "So awesome how our District's student diversity radiates through this outcome." Attached to the tweet was a photo that shows the former Salutatorian and then Co-valedictorian, Martin Peticco, Matthew Stridiron, and the new Salutatorian on the right. This phrase establishes that ethnicity or race turned the designation of valedictorian from something based on merit to promote NECSD's view of what constitutes racial equality..

35.     Sarah Feliz is one of the highest-ranking officials in the District and worked alongside Padilla before he was employed in Newburgh. Her response was inappropriate due to the fact that the racial makeup of the three students cannot be determined by merely their skin color. Matthew Stridiron is light-skinned with blue eyes, but is Salvadoran. The other two are darker, one being an African-American. The clear message was that the honor was being made more "diverse" and was not based solely upon merit.

36.     On or about May 29, 2019, the Hudson Valley Press recognized Matthew Stridiron as co-valedictorian.

37.     On or about May 29, 2019, at the Outstanding Student Recognition Dinner in Middletown, New York, Padilla and other NECSD administrators stared down the Plaintiffs to make them feel uncomfortable.

38.     On or about May 29, 2019, Padilla recognized Matthew Stridiron as co-valedictorian at the  Outstanding Student Recognition Dinner in Middletown, New York. This event had all the valedictorians/salutatorians from the county gathered in one place. This dinner also provided a booklet to each scholar with the names of each student and their respective titles. The booklet can also be found online.

39.     NECSD refused to be transparent about the formula that was used to determine the valedictorian for the Class of 2019 despite multiple requests.

40.     NECSD claimed that the parents of the salutatorian made complaints about Matthew Stridiron's status as valedictorian. Upon information and belief, this was untrue. NECSD then recalculated the class ranking again based upon yet another formula.

41.     On or about June 6, 2019, the NECSD, in their response to the NYSED commissioner, admitted that they gave Matthew Stridiron a letter saying that he is the sole valedictorian, but refused to rename him sole valedictorian, despite the mathematical proof that Matthew Stridiron was and is rightfully the sole valedictorian.

42.     On or about June 6, 2019, NECSD, in their response to the NYSED commissioner, alleged that their Infinite Campus system, which calculates class rank and GPA, malfunctioned because Matthew Stridiron was still registered as a North Campus student. However, Matthew Stridiron took all of his classes at the NFA Main Campus in his senior  year. Before Matthew Stridiron transferred over to Main from the North Campus, NECSD personnel coordinated efforts to ensure that there would be no confusion about transferring to the main campus so that the records would be clear and accurate, showing that the alleged malfunction was non-existent and an excuse.

43.     On or about June 6, 2019, NECSD falsely claimed, in their response to the

NYSED commissioner, that their Infinite Campus system did not include NFA Main courses on Matthew Stridiron's transcript prior to the valedictorian calculation. However, AP Gov, which is a course that Matthew Stridiron completed halfway into his senior year, was on his transcript. AP Econ and ELA 12, on the contrary, did not appear on the transcript because they were not yet completed courses. These facts validate what Guidance Counselor, Mrs. Harrold, advised Matthew Stridiron, that only "final course grades" are included in class rank.

44.     On or about June 6, 2019, the NECSD failed to place Policy 5430, which is the alleged policy that they use to calculate valedictorian, onto "BoardDocs", where the public can view all of NECSD's policies.

45.     On or around June 6, 2019, Padilla falsely claimed, in his response to the NYSED commissioner, that he contacted Darren Stridiron to schedule a meeting and sent Darren Stridiron correspondence which allegedly stated that he wanted two co-valedictorians.

46.     On or about June 6, 2019, Padilla falsely claimed, in his response to the NYSED commissioner, "Petitioner's son has in no way been harmed by the designation of co-valedictorians. Rather, he has benefitted in having been bestowed the honor of being a co-valedictorian, that could rightly have been denied him."

47.     On or about June 6, 2019, NECSD falsely claimed, in their response to the NYSED commissioner, that this was all a mistake. However, the District has been engaging in the same arbitrary and capricious re-calculating and renaming valedictorians in the prior year, and social media posts reveal that this practice could have gone back as far as 2013. Celine Maxwell, mother of B.M., states that the District informed her that B.M. lost her class rank of #1 and was renamed the salutatorian at the very last minute, after NECSD suddenly recalculated valedictorian based on a new system that incorporated eighth grade scores. This policy was

never approved by the Board of Education.

48.    NECSD has used three different policies to calculate class rank. The first policy is the one that Mrs. Harrold told Matthew Stridiron in an email: only final course grades are included in the calculation. The second is NECSD's alleged policy, which states that all grades up to the third quarter are included. Lastly, NECSD used an unapproved policy in 2018 that states how scores from eighth grade must be included in the calculation.

49.    On or about June 6, 2019, NECSD named Matthew Stridiron co-valedictorian at his high school's scholarship award night. He received $750 for becoming the co-valedictorian, which is $750 less than if he had been named the sole valedictorian.

50.    On or about June 11, 2019, NECSD recognized Matthew Stridiron as the co-valedictorian on its district webpage when he visited South Middle School to speak with students.

51.    On or about June 19, 2019, NECSD's actions stressed Matthew Stridiron to the point where he no longer felt comfortable attending the end of the year celebration for all graduating P-TECH students.

52.    On or about June 21 to June 24, 2019, despite how Dr. Padilla and NECSD claimed to meet with the other co-valedictorian and new salutatorian, NECSD ignored two requests to meet with Darren Stridiron and Matthew Stridiron about incorrect grades on his transcript. Correcting these grades would have made Matthew Stridiron the sole valedictorian prior to graduation.

53.    On or about June 24, 2019, Padilla, in his response to the NYSED commissioner, stated that he met with all students to discuss their grades. But, in fact, he had refused to meet with Matthew Stridiron and his family.

54.     On or about June 25, 2019, NECSD's actions stressed and damaged Matthew Stridiron to the point where he no longer felt comfortable attending his high school graduation rehearsal.

55.     On or about June 25, 2019, NECSD recognized Matthew Stridiron as co-valedictorian at the high school graduation. Bestowing the title of co-valedictorian onto Matthew Stridiron at his graduation will forever mar Matthew Stridiron's and his family's view of the celebration.

56.     In July 2019, Carole Mineo, Board of Education President, retaliated against Darren Stridiron by placing him on only one Committee assignment for the 2019-2020 school year. All other Board members have three or four committee assignments.

57.     On or about July 6, 2019, NECSD attempted to prevent Matthew Stridiron from enrolling in Columbia University by excluding classes on his academic record to make it seem like he lacked enough credits to graduate high school. By preventing Matthew Stridiron from enrolling, Matthew Stridiron would also lose his college scholarships.

58.     On or about July 8, 2019, Matthew Stridiron attempted to obtain his transcript and verify that all grades were included on it, and NECSD ignored his request.

59.     On or about July 9, 2019, Matthew Stridiron called NECSD Guidance to obtain the transcript directly. They responded by saying they would call "right back" after talking with Onyx Peterson, who is the head of Guidance. Never in the past has the Guidance Office ever had to wait on her approval. Guidance always provided it to Matthew Stridiron immediately. Guidance neither responded within the hour nor gave Matthew Stridiron his transcript.

60.     According to the other seniors in Matthew Stridiron's graduating class, none of them had classes removed from their academic records.

61.    On or about July 10, 2019, the Hudson Valley Press recognized Matthew Stridiron as the co-valedictorian in a report about how he earned the prestigious Gates/HSF scholarships.

62.    On or about July 10, 2019, NECSD, after hearing that Matthew Stridiron sent a letter to the NYSED commissioner about how NECSD excluded classes from his academic report card, sent Matthew Stridiron's updated transcript to Columbia. This transcript still contained inaccurate information and was not able to be used by Columbia University to enroll Matthew Stridiron for the Fall semester.

63.    On or about July 13, 2019, Roberto Padilla, who was not even attached to the email chain to the Board of Education letter, responded to Darren Stridiron separately. He was more concerned about who told Darren Stridiron that his office was handling the transcripts instead of the fact that the grades needed to be corrected. He claimed that Darren Stridiron made "additional accusations" against him without even listing them. Padilla admitted he had a hand in naming Matthew Stridiron co-valedictorian in May.

64.    On or about July 15, 2019, NECSD finally granted Matthew Stridiron's request and enabled him to see his transcript. However, Matthew Stridiron had to wait a week for his records. This shows that NECSD was hiding and possibly manipulating information. NECSD's lack of transparency caused undue stress and  irreparable harm on Matthew Stridiron and his family.

65.    On or around July 15, 2019, NECSD falsely claimed, in a filing to the NYSED commissioner, that Matthew Stridiron's AP Government grades were never entered on his NFA North enrollment. However, every quarter during Matthew Stridiron's senior year, Matthew Stridiron requested a  report card because NECSD never sent them to him. AP Government appeared on all three report cards, which verifies that the  class appeared on his NFA North

enrollment. If AP Government appeared on Matthew Stridiron's first three report cards, but not the last, then it had to be manually removed by NECSD.

66.     On or about July 15, 2019, NECSD contradicted themselves with previous filings to the NYSED commissioner, by saying AP Government was included on Matthew Stridiron's transcript prior to the valedictorian calculation, which validates what Mrs. Harrold said in her email to Matthew Stridiron. In previous filings, NECSD said that AP Government was not included on the transcript. The fact that NECSD finally admits that AP Government appeared on Matthew Stridiron's transcript prior to the final rank calculation, but not AP Econ and ELA 12, verifies that only final course grades are included in the class rank, not "In-Progress" classes. Thus, NECSD suggests that third quarter grades should have never been included in the final calculation.

67.     On or about July 15, 2019, NECSD falsely claimed, in a filing to the NYSED commissioner, that Matthew Stridiron's inaccurate report card, which was missing classes, only recorded "grades that were manually entered for calculating the 3rd quarter rank". If this statement were true, then the report card would say "Marking Period 3" because the district decided to use grades up to the third quarter in the class rank calculation. However, it is labeled "Marking Period 4," which means it is supposed to include fourth quarter grades and final exam scores. Yet, this data was removed from the transcript.

68.     On or about July 15, 2019, NECSD falsely claimed, in a filing to the NYSED commissioner, that Matthew Stridiron is the only NFA-North student taking classes at NFA Main, which is contrary to another filing to the NYSED commissioner, wherein Spindler indicated that other students also took classes at multiple campuses.

69.     Matthew Stridiron had previously asked NECSD to correct an incorrect AP

Computer Science grade on his transcript. It should have been listed as a 105, but it was listed as a 104. Columbia verified that this grade was not corrected on the transcript that they received from NECSD.

70.     On or about July 24, 2019, Matthew Stridiron told NECSD that Columbia University required an additional final report with accurate grades. AP Computer Science's grade from a 104 to 105 had yet to be corrected. In an email to NECSD, Matthew Stridiron told NECSD "all high school and college-level course grades need to be verified." Regardless, by the end of the day, NECSD knowingly sent a second falsified document to Columbia because the grade was never fixed.

71.     When Matthew Stridiron asked for a copy of his final grade for AP Computer Science, he was refused a copy.

72.     On or about July 29, 2019, NECSD finally agreed to correct its error and change Matthew Stridiron's AP Computer Science grade from a 104 to 105. Therefore, under any calculation, Matthew Stridiron demonstrated he was and is the sole valedictorian of the class of 2019. However, NECSD refused to rename him as sole valedictorian.

73.     On or about July 29, 2019, after NECSD corrected the AP Computer Science grade, Matthew Stridiron discovered another inaccurate grade on his transcript. Walking for Wellness, which was used to calculate class rank, should have been an "A", not an "A-". The correction of the Walking for Wellness grade provided additional mathematical proof that Matthew Stridiron was the sole valedictorian. If NECSD corrected this grade, then Matthew Stridiron would have the highest GPA in the Class of 2019.

74.     NECSD refused to correct the grade and sent a third false document to Columbia that corrected the AP Computer Science grade, but not the Walking for Wellness grade.

75.     On or about August 2, 2019, NECSD corrected Matthew Stridiron's Walking for Wellness grade on his transcript, but they refused to update his final GPA, even though Walking for Wellness was used to calculate his final GPA.

76.     On or about August 3, 2019, Matthew Stridiron informed the Board of Education that NECSD failed to correct his final GPA. He asked them to make sure that they sent him an updated transcript, but the Board of Education never responded.

77.     Matthew Stridiron attended professional therapy weekly due to the stress caused by the defendants.

78.     Darren and Evelyn Stridiron were required to hire legal representation because NECSD continuously tampered with Matthew Stridiron's grades as well as the formula used to calculate class rank.

79.     Plaintiffs experienced stress and anguish as a result of the defendants' actions.

80.     Defendant Phil Howard continued to make verbal and written comments regarding Darren Stridiron since the Grand Jury report was released. Phil Howard contacted the entire Board of Education and called for a Special Meeting for the purpose of making Darren Stridiron "cease and desist" from his "frivolous" actions of representing his minor son in the obtaining of a corrected transcript.

81.     In those same months, Darren Stridiron was embarrassed repeatedly when he was singled out for being forced to leave during the Board of Education's executive session. These actions took place while other Board Members acted outside of their roles and were still allowed to remain in executive session. NECSD gave them legal protection. This was a centralized, coordinated effort to single out Darren Stridiron.

82.     Darren and Eveln Stridiron's car was vandalized after they pursued the

valedictorian issue.

83.     Darren and Evelyn Stridiron were subject to ridicule and scorn for pursuing the wrongful retraction of their son's valedictorian status and his right to have correct and accurate transcript of his classes and grades.

84.     Matthew Stridiron was subjected to ridicule and scorn for pursuing the wrongful retraction of their son's valedictorian status and his right to have correct and accurate transcript of his classes and grades.

85.     These actions damaged the plaintiffs in an amount in excess of all lower courts.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

86.     Plaintiffs repeat all allegations set forth above as if set forth fully herein.

87.     Defendants knew, or were negligent in not knowing, that their records were not kept appropriately such that false transcripts were prepared and shared with outside entities and improper calculations were made in the calculating of class rank for the class of 2019.

88.     Defendants owed plaintiff, Matthew Stridiron, at the relevant times a minor, a duty to keep proper school records that reflected accurate grades for the purposes of students applying to college and for the calculation of such honors as school valedictorian.

89.     Defendants' negligent act(s) in record keeping and the calculation of class rank, by commission and/or omission, resulted directly and/or proximately in the damage set forth herein at length.

90.     At all times material hereto, with regard to the allegations contained herein, defendants' actions were negligent in their disregard for the rights and interests of plaintiffs.

91.     As a direct and/or indirect result of said conduct, plaintiffs have suffered the

injuries and damages of mental distress, embarrassment, humiliation, loss of reputation, legal expenses, and expenses.

92.     By reason of the foregoing, defendants, jointly, severally and/or in the alternative, are liable to plaintiffs for compensatory damages, for the public hatred, ridicule, disgrace, and permanent harm to their professional and personal reputations, loss of monetary payments, and property damage as a result of defendants' actions.

**SECOND CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**

93.     Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

94.     There exists a fiduciary relationship of trust, confidence, and reliance between plaintiff Matthew Stridiron and all the defendants herein.

95.     Pursuant to their fiduciary relationship, defendants were entrusted with the proper care in maintaining and implementing the educational records of the plaintiff and all other students and to properly calculate the grade point averages and class rank for its students.

96.     Pursuant to their fiduciary relationship, defendants assumed a duty to act in the best interests of plaintiff and all students similarly situated.

97.     Defendants breached their fiduciary duties to plaintiff when they failed to maintain proper educational records, randomly changed the criteria for class rank, refused access to the calculations or changes in the policy to determine class rank and refused to correct class rankings.

98.     At all times material hereto, defendants' actions and/or inactions were willful, wanton, malicious, reckless, and outrageous in their disregard for the rights of plaintiff

Matthew Stridiron.

99.     As a direct result of said conduct, plaintiff Matthew Stridiron has suffered injuries and damages described herein.

100.     By reason of the foregoing, defendants, jointly, severally and/or in the alternative, are liable to plaintiffs for compensatory damages, for the public hatred, ridicule, disgrace, and permanent harm to their professional and personal reputations, loss of monetary payments, and property damage as a result of defendants' actions.

**THIRD CAUSE OF ACTION**
**BREACH OF A NON-DELEGABLE DUTY**

101.     Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

102.     There existed a non- delegable duty of trust between plaintiffs and defendants.

103.     Plaintiffs did not have the ability to make the calculations for class rank. Defendants controlled all aspects of such ranking.

104.     As a consequence, the defendants were in the best position to prevent and ensure that the rankings were based on correct and complete educational records, to properly calculate the rankings, to have fair and transparent policies with regard to the calculation for class ranks, and to correct any mistakes in such calculations.

105.     By virtue of the fact that plaintiff Matthew Stridiron was mathematically the valedictorian of the class and the defendants did not correct the error, defendants breached their non-delegable duty to plaintiff.

106.     At all times material hereto, defendants had the sole ability and duty to maintain accurate educational records and to calculate the class rank.

107.     As a direct result of said conduct, Plaintiff has suffered injuries and damages

described herein.

108.     By reason of the foregoing, defendants, jointly, severally and/or in the alternative, are liable to plaintiffs for compensatory damages, for the public hatred, ridicule, disgrace, and permanent harm to their professional and personal reputations, loss of monetary payments, and property damage as a result of defendants' actions.

**FOURTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**

109.     Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

110.     Defendants caused and allowed the acts of omission and/or commission and/or any or all of the allegations set forth in this Complaint, to occur.

111.     When the plaintiffs brought the errors in the class rank to light, instead of protecting the plaintiff Matthew Stridiron, defendants ignored the plaintiffs and tried to conceal their errors and manipulation of the ranking procedure and refused to correct Matthew Stridiron's rank.

112.     At all times material hereto, said defendants' actions were willful, wanton, malicious, reckless, negligent, grossly negligent and/or outrageous in their disregard for the rights of plaintiffs.

113.     As a direct result of said conduct, plaintiffs have suffered injuries and damages described herein.

114.     By reason of the foregoing, defendants, jointly, severally and/or in the alternative, are liable to plaintiffs for compensatory damages, for the public hatred, ridicule, disgrace, and permanent harm to their professional and personal reputations, loss of monetary payments, and property damage as a result of defendants' actions.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

115.     Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

116.     During the calculation of the class ranking for the Class of 2019, the individual defendants made numerous errors, manipulations of plaintiff's educational records, and attempted to change the policies to ensure that Matthew Stridiron would not be granted valedictorian status.

117.     Despite the fact that the plaintiffs provided information that showed that Matthew Stridiron was entitled to be the sole valedictorian, the individual defendants refused to correct his status.

118.     The individual defendants willfully and/or intentionally took measures to deny Matthew Stridiron his proper rank and created a hostile school environment that no child would be able to tolerate.

119.     The individual defendants, in order to avoid embarrassment, scandal, and negative publicity, intended to cause plaintiffs' shame, humiliation and extreme emotional distress so they would stay silent and not challenge Matthew Stridiron's ranking, by, including, but not limited to, changing his rank to that of salutatorian and then advising him that he might not even be ranked as the salutatorian if he continued to question his ranking.

120.     When the errors were brought to the individual defendants' attention, these defendants ignored their concerns, attempted to intimidate the plaintiffs and ultimately refused to correct the ranking.

121.     The defendants accused the plaintiffs of improper conduct and held them up for ridicule and scorn.

122.    The individual defendants behaved in a manner towards plaintiffs that was so outrageous as to exceed all reasonable bounds of decency.

123.    These defendants knew with substantial certainty or should have known that their behavior caused plaintiff to be denied his proper ranking as sole valedictorian.

124.    These defendants knew with substantial certainty or should have known that their behavior would cause severe emotional distress, embarrassment and humiliation to plaintiffs and cause the plaintiffs to be held in contempt by the community.

125.    The foregoing acts of these defendants caused plaintiffs physical, mental and emotional distress.

126.    By reason of the foregoing, these defendants, jointly, severally and/or in the alternative, are liable to plaintiffs for compensatory damages, for the public hatred, ridicule, disgrace, and permanent harm to their professional and personal reputations, loss of monetary payments, and property damage as a result of defendants' actions.

## SIXTH CAUSE OF ACTION
## NEGLGENT INFLICTION OF EMOTIONAL DISTRESS

127.    Plaintiffs repeat and realalege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

128.    As described aforesaid, the actions of the individual defendants were negligent and/or grossly negligent.

129.    The individual defendants' actions above caused plaintiffs emotional harm.

130.    As a direct and proximate result of the individual defendants' actions, which included but were not limited to, negligent and/or grossly negligent conduct, plaintiffs suffered the injuries and damages described herein, including but not limited to, mental and emotional distress.

131.     By reason of the foregoing, defendants, jointly, severally and/or in the alternative, are liable to plaintiffs for compensatory damages, for the public hatred, ridicule, disgrace, and permanent harm to their professional and personal reputations, loss of monetary payments, and property damage as a result of defendants' actions.

## SEVENTH CAUSE OF ACTION
## FRAUD

132.     Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

133.     The individual defendants improperly attempted to interfere with Matthew Stridiron's grades and rank as valedictorian.

134.     Once Matthew Stridiron was named as valedictorian, the individual defendants took steps to strip him of the honor.

135.     Upon information and belief, these defendants fraudulently changed the process of calculating the class rank after it was discovered that Matthew Stridiron was the valedictorian.

136.     Upon information and belief, these defendants fraudulently changed Matthew Stridiron's classes and grades on his transcript to further the scheme of stripping him of his valedictorian status.

137.     These defendants then tried to cover up this fraudulent scheme by refusing to provide the information requested by the plaintiffs to ascertain the accuracy of the records and the calculations.

138.     Defendants continued in providing false information to Columbia University and provided false information to the New York State Department of Education to justify their conduct.

139.     Upon information and belief, Matthew Stridiron's grades were altered downward

so that he would wrongfully be denied the rank of sole valedictorian.

140.    In furtherance of the fraud, defendants sent Columbia University multiple transcripts with the downward modified grades and an incorrect GPA for Matthew Stridiron.

141.    As a direct and proximate result of defendants' actions, which included but were not limited to, negligent and/or grossly negligent conduct, plaintiffs suffered the injuries and damages described herein, including but not limited to, mental and emotional distress.

142.    By reason of the foregoing, defendants, jointly, severally and/or in the alternative, are liable to plaintiffs for compensatory damages, for the public hatred, ridicule, disgrace, and permanent harm to their professional and personal reputations, loss of monetary payments, and property damage as a result of defendants' actions.

### EIGHTH CAUSE OF ACTION
### VIOLATIONS OF THE FIRST AMENDMENT OF THE US CONSTITUTION AND ARTICLE I, SECTION 2 OF THE NYS CONSTITUTION

143.    Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

144.    At all times relevant, the conduct of defendants were subject to 42 USC § 1983 and § 1988, the First Amendment to the Constitution of the United States, and Article I, Section 2 of the New York State Constitution.

145.    Plaintiffs had a clearly established constitutional right to speak about school policy.

146.    Based on clearly established United States Supreme Court, Second Circuit, and New York State case law, defendants knew or should have known of plaintiffs' constitutional rights to speak freely about their disagreement with NECSD's policies.

147.    By their actions, defendants violated plaintiffs' clearly established constitutional

right to free speech by attempting to prevent Matthew Stridiron from being interviewed by the press.

148.     Defendants also violated plaintiffs' clearly established constitutional right to free speech by retaliating against Darren Stridiron for his statements regarding NECSD's policies and practices by denying his son, Matthew Stridiron, his rightful title as valedictorian; by denying Darren Stridiron committee positions on the Board of Education; and by excluding him from Executive Sessions.

149.     At all times relevant, defendants had final policy-making and decision-making authority with regard to the selection of a class valedictorian, keeping school records, for the appointment to committees on the Board of Education, and for inclusion in Executive sessions.

150.     The NECSD is liable under 42 USC § 1983 because defendants, in their capacity as final decision-makers and policy-makers, caused and ratified the unlawful suppression of plaintiffs Matthew Stridiron's and Darren Stridiron's protected speech.

151.     Defendants actions as final decision-makers and policy-makers were the proximate cause of the suppression of Matthew and Darren Stridiron's speech and punishment of the plaintiffs for their protected speech in violation of 42 USC § 1983.

152.     The actions were taken under color of law when they deprived the plaintiffs of their rights under the federal and state constitutions.

153.     Plaintiffs' speech was not vulgar, threatening or offensive and did not cause disruption in the school setting.

154.     As a direct and proximate result of defendants' actions, plaintiffs suffered the injuries and damages described herein, including but not limited to, mental and emotional distress.

155.    As a direct and proximate result of defendants' actions, plaintiffs suffered losses to their standing in the community and business losses related to the retaliatory actions by the defendants.

156.    By reason of the foregoing, defendants, jointly, severally and/or in the alternative, are liable to plaintiffs for compensatory damages, for the public hatred, ridicule, disgrace, and permanent harm to their professional and personal reputations, loss of monetary payments, and property damage as a result of defendants' actions.

## NINTH CAUSE OF ACTION
## VIOLATIONS OF THE FOURTEENTH AMENDMENT OF THE US CONSTITUTION DUE PROCESS

157.    Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

158.    At all times relevant, the conduct of defendants were subject to the Fourteenth Amendment to the Constitution of the United States.

159.    Plaintiff Matthew Stridiron had a clearly established constitutional right to due process before he was stripped of his class rank and valedictorian status.

160.    Based on clearly established United States Supreme Court, Second Circuit, and case law, defendants knew or should have known plaintiff had a constitutional property right to his rightful class rank, valedictorian status, accurate transcripts, and the eligibility for scholarships and awards related thereto.

161.    By their actions in changing the method of calculating class rank, manipulating grades, and in meeting with other parents, but not the Stridirons, regarding class rankings, defendants violated plaintiffs' clearly established constitutional rights.

162.    At all times relevant, defendants had final policy-making and decision-making

authority with regard to the methodology of class ranking, maintaining accurate transcripts and the selection of a class valedictorian.

163.    The NECSD is liable under 42 USC § 1983 because defendants denied the plaintiffs' due process when they allowed other parents to meet with school officials, such as defendants Padilla and Spindler, to allegedly dispute class rankings, but did not afford the plaintiffs the opportunity to be notified and heard before the recalculations.

164.    Defendants' actions as final decision-makers and policy-makers in refusing to meet with the plaintiffs when they met with others were the proximate cause of the denial of plaintiffs' due process rights in violation of 42 USC § 1983.

165.    The actions were taken under color of law when they deprived the plaintiffs of their rights under the federal constitution.

166.    As a direct and proximate result of defendants' actions, plaintiffs suffered the injuries and damages described herein, including but not limited to, mental and emotional distress.

167.    By reason of the foregoing, defendants, jointly, severally and/or in the alternative, are liable to plaintiffs for compensatory damages, for the public hatred, ridicule, disgrace, and permanent harm to their professional and personal reputations, loss of monetary payments, and property damage as a result of defendants' actions.

## TENTH CAUSE OF ACTION
## VIOLATIONS OF THE FOURTEENTH AMENDMENT OF THE US CONSTITUTION
## EQUAL PROTECTION

168.    Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

169.    At all times relevant, the conduct of defendants were subject to the Fourteenth

Amendment to the Constitution of the United States.

170.    Plaintiff Matthew Stridiron had a clearly established constitutional right to due process to be awarded his proper class ranking and an accurate transcript regardless of his race.

171.    Based on clearly established United States Supreme Court and Second Circuit case law, defendants knew or should have known of plaintiff's constitutional right to his rightful rank, valedictorian status, accurate transcript and the eligibility for scholarships and awards related thereto regardless of his race.

172.    By their actions in stripping Matthew Stridiron of his proper rank and valedictorian status in order to claim that African American and Hispanic individuals were the valedictorian and salutatorian for diversity reasons, defendants violated plaintiff's clearly established constitutional rights.

173.    At all times relevant, defendants had final policy-making and decision-making authority with regard to the methodology of class ranking and the selection of a class valedictorian and salutatorian.

174.    The NECSD is liable under 42 USC § 1983 because defendants, in their capacity as final decision-makers and policy-makers, denied the plaintiff equal protection under the laws when it determined that it preferred that the valedictorian and salutatorian where not viewed as Caucasian and made a point to congratulate itself for its diversity policies.

175.    Defendants actions as final decision-makers and policy-makers were the proximate cause of the denial of plaintiffs' due process rights in violation of 42 USC § 1983.

176.    The actions were taken under color of law when they deprived the plaintiffs of their rights under the federal constitution.

177.    As a direct and proximate result of defendants' actions, plaintiffs suffered the

injuries and damages described herein, including but not limited to, mental and emotional distress.

178.     By reason of the foregoing, defendants, jointly, severally and/or in the alternative, are liable to plaintiffs for compensatory damages, for the public hatred, ridicule, disgrace, and permanent harm to their professional and personal reputations, loss of monetary payments, and property damage as a result of defendants' actions.

## ELEVENTH CAUSE OF ACTION
## ASSAULT

179.     Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

180.     Matthew Stridiron was the subject of an assault when NECSD school personnel caused him to be physically restrained as he attempted to give an interview prior to graduation.

181.     The interview had been agreed to and did not violate any school policy.

182.     Matthew Stridiron did not consent to the touching and it was unwelcome and unwarranted.

183.     As a direct and proximate result of defendants' actions, plaintiffs suffered the injuries and damages described herein, including but not limited to, mental and emotional distress.

184.     By reason of the foregoing, defendants, jointly, severally and/or in the alternative, are liable to plaintiffs for compensatory damages, for the public hatred, ridicule, disgrace, and permanent harm to their professional and personal reputations, loss of monetary payments, and property damage as a result of defendants' actions.

## TWELFTH CAUSE OF ACTION
## SLANDER

185.     Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

186.     Darren Stridiron was the subject of slander when defendant Carole Mineo stated "You are not honest. You told people confidential information."

187.     Darren Stridiron was further subjected to slander when defendant Phil Howard stated to a reporter that a Board Member was using his "influence" to get his son named co-valedictorian in an attempt to rob a "poor Hispanic kid" of that honor. Howard told the reporter that they should run a story on that. It was clear that Darren Stridiron was the Board Member in question.

188.     These were false statements.

189.     The statements by defendant Howard are per se slander.

190.     These statements were made to third parties without privilege or authorization.

191.     Defendants Mineo and Howard were at least negligent in making these statements.

192.     These statements held Darren Stridiron to contempt, ridicule and loss of status on the Board such that he was prevented from being in executive sessions and not allowed on committees.

193.     These statements caused harm to plaintiff Darren Stridiron and Evelyn Stridiron, including harm to their business, standing in the community, and caused vandalism to their property.

194.     By reason of the foregoing, defendants, jointly, severally and/or in the alternative, are liable to plaintiff for compensatory damages, for the public hatred, ridicule,

disgrace, and permanent harm to his professional and personal reputation, loss of monetary payments, and property damage as a result of defendants' actions.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure, trial by jury on all issues is demanded.

**WHEREFORE**, plaintiffs request the following relief:

A.      Award plaintiffs damages for the injuries suffered as specified herein;

B.      Award plaintiff attorneys' fees, costs and disbursements in this action;

C.      Punitive damages against the individual defendants;

D.      Award pre and post judgment interest; and,

E.      Such other relief as this Court deems just and proper.

Dated:  November 5, 2020
           Rochester, New York

**TULLY RINCKEY, PLLC**

By:  /Jeffrey L. Nogee/
Jeffrey L. Nogee, Esq.
777 Third Avenue
21st Floor
New York, NY 10017
jnogee@tullylegal.com
Tele. (646) 813-2962
*Attorneys for Plaintiffs*